THE STATE v. H. L. HARWOOD.

*Master and Servant—Enticing Servants—Indictment—Constitution—Statutes—Contract—Infants.*

1. In an indictment for enticing servants to leave their employers, under section 3119 of *The Code,* it is sufficient if a contract with the servant, or those who may be authorized to contract on his behalf, is alleged, without specifying whether it was in writing or oral; nor is it necessary to set forth the means by which the enticing was accomplished where the words employed in the statute, are used in the indictment in describing the offence.

2. Notwithstanding the contract between the master and servant may be voidable at the option of the latter, because of his infancy, if while the relation subsists, a stranger officiously and unlawfully interferes and induces the servant to leave his employer, he is guilty of a violation of the statute.

3. The statute is not in conflict with the Constitution.

· This is a CRIMINAL ACTION which was tried before *Armfield, J.,* at September Term, 1889, of WAYNE Superior Court.

The defendant and one L. B. White are charged with violating the provisions of section 3119 of *The Code* in an indictment containing two counts, one for enticing, persuading and procuring three named persons in the service of the Wayne Agricultural Works, a corporation formed under the laws of this State, under contract as laborers, to leave the service of their employer; the other for knowingly harboring and detaining them in the defendant's service after leaving the service of said corporation.

The statute under which the indictment is framed is in these words:

"If any person shall entice, persuade and procure any servant by indenture, or any servant who shall have contracted in writing or orally to serve his employer, to unlawfully leave the service of his master or employer, or if any person shall knowingly and unlawfully harbor and detain,

in his own service and from the service of his master and employer, any servant who shall unlawfully leave the service of such master or employer, then in either case such person may be sued, singly or jointly, by the master, and on recovery he shall have judgment for the actual double value of the damages assessed."

The succeeding section makes the forbidden acts a misdemeanor also, and subjects the offender to a penalty of one hundred dollars to any person suing for the same.

The indictment is as follows:

"The jurors upon their oath present, that H. L. Harwood and L. B. White, late of the county of Wayne, on the 19th day of August, in the year of our Lord one thousand eight hundred and eighty-nine, at and in the county aforesaid, unlawfully and willfully did entice, persuade and procure Will Humphrey, Sam Womble and Wayland Tutor, servants, who had heretofore contracted with the Wayne Agricultural Works—a company incorporated under the Laws of North Carolina—to serve said Wayne Agricultural Works as servants and laborers, which contract was then in force and subsisting, to unlawfully leave the service of the said Wayne Agricultural Works (the employers aforesaid of the said servants Will Humphrey, Sam Womble and Wayland Tutor), against the form of the statute in such cases made and provided, and against the peace and dignity of the State.

"And the jurors aforesaid, upon their oath aforesaid, do present, that the said H. L. Howard and L. B. White, on the day and year aforesaid, in the county aforesaid, unlawfully, willfully and knowingly did harbor and detain in their own service Will Humphrey, Sam Womble and Wayland Tutor, servants of the Wayne Agricultural Works, a company aforesaid incorporated under the laws of North Carolina, which servants had theretofore left the service of the said Wayne Agricultural Works, their employers, against the

form of the statute in such cases made and provided, and against the peace and dignity of the State."

Upon the trial of his plea of not guilty, it was admitted that the Wayne Agricultural Works was an incorporated company, and that the three employees alleged to have been enticed from its services were under twenty one years of age and had not been bound as apprentices, but were serving under a contract made by each of them with the company.

It was in evidence that these boys were working in the foundry as moulders, and had been for eleven months, and had agreed to remain for three years; that they left August 17th, 1889, up to which time they were paid their wages; that, in a conversation afterwards, defendant said to the secretary of the company, "I have employed all of your men, and I am going to employ others as soon as you get them, and I will pay them more wages than you will pay them. We are going to prevent the Wayne Works from making certain goods that they have a legal but no moral right to make"; and that the young men went off with him; that the boys had been notified of an advance in their wages, to take place in September; that the defendant is in the employ of S. R. White & Bro., who carry on a foundry at Norfolk.

A witness for defendant testified that, on behalf of the company, he employed the boys, who did not agree to remain for any specified time, and that their wages should be increased every six months.

There was much other testimony offered, which, as not material to the present appeal, is not repeated.

The defendant objected that, as the persons enticed away were under age and could make no binding contract, and the case does not come within the terms or purposes of the act, and as the infants could lawfully leave the service, the defendant could lawfully advise them to do so.

*The Attorney General* and *Mr. C. B. Aycock*, for the State.
*Messrs. W. R. Allen* and *W. C. Monroe*, for the defendant.

SMITH, C. J —after stating the case : The inference drawn
is not warranted, for, as was said in *State* v. *Daniel*, 89 .N. C.,
553, "the mischief which the enactment was intended to
remedy was the interference of others with the servants who
had thus agreed to serve by offering them inducements to
depart, or with knowledge that they had so departed in dis-
regard of their contract obligations by receiving such into
their service." So the offence consists not in abandoning
the service, but enticing such as were disposed to remain to
leave and break their contracts.

The contract with the infants was void only at their elec-
tion, and operative as to all except privies, and hence, while
subsisting, is provided against interference from others as
much as if obligatory on both parties to it. It cannot be
treated as a nullity by the defendant, who officiously and
unlawfully interfered to induce its abandonment by the
seduced infants. The mischief is as great as if the contrac-
tors were adults, and the remedy is co-extensive with the
mischief provided against.

Nor is the indictment defective in either of the particulars
pointed out. The act, in its original form, applied to serv-
ants only by indenture, or whose contracts were in writing
(Bat. Rev., ch. 70); and, to bring an offender under the
denunciation of the statute, it was necessary to aver and
prove that the service was by indenture, or by virtue of a
written contract, since this was an essential element in the
crime, and so it was held in *State* v. *Rice*, 76 N. C., 194.
The phraseology has undergone a change in *The Code*, and
the provision leaving out the word "indenture" is made to
embrace every case of service under contract, "whether in
writing or oral," and hence it is sufficient to allege the con-
tract without specifying whether it was in writing or oral.

Nor is it necessary to specify by what acts or words the enticing was effected. It is generally sufficient to charge a statutory offence in the words of the statute, and it is necessary to be specific in setting out the facts only when the statute is, in terms, too comprehensive, and this to show that the offence is embraced in it.

In the indictment under a statute which prohibits the abducting, or by any means inducing, a child under fourteen years of age to leave the relative mentioned, or school where he or she may be placed, shall be guilty of a crime, &c., it was held sufficient to use the words of the statute defining the offence, nor was it needful to set out the means by which the abduction was effected. *State* v. *George*, 93 N. C., 567. Nor do we yield our assent to the argument, pressed with so much earnestness, that the statute violates any principle of the Constitution, because limited to laborers and servants. The evil consequences of such interference with that class of persons doubtless led to this limitation upon the enactment.

There is no error, and the judgment is affirmed.

Affirmed.